Santino M. Tropea (SBN 249215)
stropea@tropeamcmillan.com
Brandon J. Vegter (SBN 234708)
bvegter@tropeamcmillan.com
TROPEA MCMILLAN, LLP
4747 Morena Blvd., Suite 250A
San Diego, California 92117
Telephone: (858) 703-8103
Facsimile: (858) 533-8813

Attorneys for Plaintiff Asbury Properties, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASBURY PROPERTIES, INC.,<br><br>Plaintiff,<br>v.<br><br>ROXANNE NICKEL BARKLEY;<br>ESTATE OF ANTHONY O'MALLEY;<br>ESTATE OF JACK S. JACOBSON;<br>ESTATE OF PAULETTE A.<br>JACOBSON; JAGDISH PATEL and<br>HARSHA PATEL doing business as<br>FIRST CABIN CLEANERS and<br>CLASSIC CLEANERS; C & L, LLC,<br><br>Defendants. | Case No.:<br><br>COMPLAINT FOR:<br><br>1) Cost Recovery Under CERCLA § 107(a);<br>2) Declaratory Relief Under CERCLA § 113(g)<br>3) Continuing Nuisance<br>4) Continuing Trespass<br>5) Equitable Indemnity<br>6) Declaratory Relief Under CCP § 1060<br>7) Breach of Contract<br><br>[JURY TRIAL DEMANDED] |

COMES NOW Plaintiff ASBURY PROPERTIES, INC. (hereinafter, "Plaintiff"), and alleges upon knowledge as to its own acts, and upon information and belief as to the acts of all others, as follows:

**STATEMENT OF ACTION**

1.     Plaintiff brings this action under 42 U.S.C. § 9607 *et seq.* of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA") and various other federal and state statutory and common law theories for, among other relief, the recovery of costs incurred by Plaintiff in response to the release and threatened release of Hazardous Substances onto certain real property located at 16071 Bolsa Chica Street, Huntington Beach, CA 92649 (the "Cleaners Site").

2.     Plaintiff alleges that Defendants ROXANNE NICKEL BARKLEY; ESTATE OF ANTHONY O'MALLEY; ESTATE OF JACK S. JACOBSON; ESTATE OF PAULETTE A. JACOBSON; JAGDISH PATEL and HARSHA PATEL doing business as FIRST CABIN CLEANERS and CLASSIC CLEANERS; and C & L, LLC (hereinafter collectively "Defendants"), by and through their ownership of and/or operations on the Cleaners Site, have damaged Plaintiff by causing sudden and accidental releases and/or spills of chemicals, which in turn have caused environmental contamination to exist at the Cleaners Site.

**JURISDICTION AND VENUE**

3.     This Court has jurisdiction over Plaintiff's claims under federal law pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 9613(b).

4.     This Court has supplemental jurisdiction over the subject matter of Plaintiff's other causes of action pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims in this action that they form the same case and controversy under Article III of the U.S. Constitution.

1

COMPLAINT

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), because the claims arose out of an actual or threatened release of Hazardous Substances that occurred on the Cleaners Site within this judicial district.

**PARTIES**

6.      Plaintiff Asbury Properties, Inc. is, and at all relevant times was, a California corporation with its principal place of business in California. Plaintiff owned the Cleaners Site, has incurred, and continues to incur Response Costs in response to the release and threatened release of Hazardous Substances on the Cleaners Site. Plaintiff further has the right and certain obligation(s) to respond to the release and threatened release of Hazardous Substances on the Cleaners Site as set forth in the Environmental Indemnification Agreement and its operative Amendment(s) with Cathay Investment, LLC.

7.      Plaintiff is informed and believes and thereon alleges Defendant Roxanne Nickel Barkley (formerly Roxanne O'Malley) owned and/or operated a drycleaner named First Cabin Cleaners on the Cleaners Site from approximately 1976 to 1987.

8.      Defendant Estate of Anthony O'Malley is named as a defendant herein to the extent of the Estate's assets whether distributed or undistributed and pursuant to California Probate Code §§ 550 through 555, to establish the decedent's liability for which he was protected by liability insurance policies. Plaintiff is informed and believes and thereon alleges that Anthony O'Malley owned and/or operated a drycleaner named First Cabin Cleaners on the Cleaners Site from approximately 1976 to 1987.

9.      Defendant Estate of Jack S. Jacobson is named as a defendant herein to the extent of the Estate's assets whether distributed or undistributed and pursuant to California Probate Code §§ 550 through 555, to establish the decedent's liability for which he was protected by liability insurance policies. Plaintiff is informed and

2

believes and thereon alleges that Jack A. Jacobson owned and/or operated a drycleaner named First Cabin Cleaners on the Cleaners Site from approximately 1974 to 1976.

10.     Defendant Estate of Paulette A. Jacobson is named as a defendant herein to the extent of the Estate's assets whether distributed or undistributed and pursuant to California Probate Code §§ 550 through 555, to establish the decedent's liability for which he was protected by liability insurance policies. Plaintiff is informed and believes and thereon alleges that Paulette A. Jacobson owned and/or operated a drycleaner named First Cabin Cleaners on the Cleaners Site from approximately 1974 to 1976.

11.     Plaintiff is informed and believes and thereon alleges Defendant Jagdish Patel doing business as First Cabin Cleaners and Classic Cleaners owned and/or operated a drycleaner on the Cleaners Site from approximately 1987 to 2001. Jagdish Patel is also the guarantor of the lease of Defendant C & L, LLC.

12.     Plaintiff is informed and believes and thereon alleges Defendant Harsha Patel doing business as First Cabin Cleaners and Classic Cleaners owned and/or operated a drycleaner on the Cleaners Site from approximately 1987 to 2001.

13.     Plaintiff is informed and believes and thereon alleges Defendant C & L, LLC owns and/or operates a drycleaner on the Cleaners Site from approximately 2001 to present.

14.     Each of the Defendants identified above shall be collectively hereinafter referred to as the "Defendants."

15.     Whenever it is alleged herein that any act or omission was also done or committed by a specifically named Defendant or Defendants generally, Plaintiff intends to allege and alleges that the same act or omission was also committed by each and every Defendant named herein, both separately and in concert or conspiring with the other Defendants. Plaintiff prays for leave of this Court to amend the Complaint when those names and capacities are ascertained.

3

**DEFINITIONS**

16. **Disposal or Dispose**: As used in this pleading, the term "Disposal" or "Dispose" shall have the meaning set forth in the Solid Waste Disposal Act ("SWDA"), § 1004 (3), 42 U.S.C. § 6903(3):

> [t]he discharge, deposit, injection, dumping, spilling, leaking or placing of any solid waste or hazardous waste into or on any land or water so that such waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters.

17. **Environment**: As used in this pleading, the term "Environment" shall have the meaning set forth in CERCLA § 101(8), 42 U.S.C. § 9601(8):

> (A) the navigable waters, the waters of the contiguous zone, and the ocean waters for which the natural resources are under the exclusive management authority of the United States ... and (B) any other surface water, ground water, drinking water supply, land surface or subsurface strata, or ambient air within the United States or under the jurisdiction of the United States.

18. **Facility**: As used in this pleading, the term "Facility" shall have the meaning set forth in CERCLA § 101(9), 42 U.S.C. § 9601(9):

> (A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works) well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock or aircraft, or (B) any Site or area where a hazardous substance has been deposited, disposed of, or placed, or otherwise come to be located;

4

but does not include any consumer product in consumer use or any vessel.

19.    **Hazardous Substance**: As used in this pleading, the term "Hazardous Substance" shall have the meaning set forth in CERCLA § 101(14)(B), 42 U.S.C. § 9601(14)(B) and CERCLA § 101(14)(C), 42 U.S.C. § 9601(14)(C), as listed by the U.S. Environmental Protection Agency ("EPA") at 40 C.F.R. § 302.4, pursuant to its authority under CERCLA § 102, 42 U.S.C. § 9602 and applicable state law.

20.    **Hazardous Waste**: As used in this pleading, the term "Hazardous Waste" shall have the meaning set forth in SWDA § 1004(5), 42 U.S.C. § 6905(5):

> [a]ny solid waste, or combination of solid wastes, which because of its quantity, concentration, or physical chemical or infectious characteristics may –
>
> (A) cause or significantly contribute to an increase in mortality or any increase in serious irreversible, or incapacitating reversible illness; or
>
> (B) pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed.

Hazardous Waste shall also include the definition of Hazardous Waste as defined by applicable state law and "Solid Waste" as set forth in SWDA § 1004(27), 42 U.S.C. § 6903(27), and applicable state law.

21.    **National Contingency Plan**: As used in this pleading, the term "National Contingency Plan" ("NCP") means the National Oil and Hazardous Substance Pollution Contingency Plan, as set forth in 40 C.F.R. Part 300, the Congressionally-mandated plan developed by the EPA that delineates the required procedures for investigating, analyzing remedial alternatives, responding to, and

abating the adverse effects of Releases of Hazardous Substances into the Environment.

22. **Release**: As used in this pleading, the term "Release" shall have the meaning set forth in CERCLA § 101(22), 42 U.S.C. § 9601(22):

> [a]ny spill, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping or disposing into the environment (including the abandonment or discharging of barrels, containers, and other closed receptacles containing any hazardous substance or pollutant or contaminant).

23. **Response Cost(s)**: As used in this pleading, the term "Response Costs" means the costs of "removal" and "remedial actions" of Hazardous Substances and/or Hazardous Wastes, as those terms are defined in CERCLA § 101(23) and (24), 42 U.S.C. § 9601(23) and (24), all other costs to respond to Releases of Hazardous Substances, as defined in CERCLA § 101(25), 42 U.S.C. § 9601(25). Such costs include, but are not limited to, costs incurred to monitor, assess, and evaluate the Release of Hazardous Substances and/or Hazardous Waste, and costs of "removal" and Disposal of Hazardous Substances and/or Hazardous Waste.  Such costs also include those incurred in actions to permanently remedy the Release of Hazardous Substances and/or Hazardous Waste, including, but not limited to: (a) the storage, confinement, or cleanup of Hazardous Substances and/or Hazardous Waste; (b) the recycling or reuse, diversion, destruction, or segregation of reactive wastes; (c) the dredging or excavation, repair or replacement of leaking containers; and (d) any other such action necessary to protect public health, welfare, and the Environment.  The term "Response Cost" also means any costs and attorneys' fees incurred in enforcing removal or remedial actions, or CERCLA's scheme for liability, compensation, and cost-recovery set forth in CERCLA § 102(25), 42 U.S.C. § 9601(25).

COMPLAINT

24.　**Environmental Conditions**: As used in this pleading, the term "Environmental Conditions" means the contamination and pollution at and in the vicinity of the Cleaners Site due to the presence of Hazardous Substances, Hazardous Waste, and/or petroleum products, including, but not limited to, the structures, soil, subsoil, air, vapor, surface water, and groundwater thereon.

**GENERAL ALLEGATIONS**

25.　The Cleaners Site is approximately 2.9 acres and includes three multi-tenant commercial structures which total approximately 30,234 square feet in size occupied by multiple retail tenants including a drycleaner and various others.

26.　Soil vapor and soil impacts from the release(s) of Hazardous Substances, including perchloroethylene ("PCE") and trichloroethylene ("TCE") as well as other Hazardous Substances, at concentrations that exceed the screening levels for commercial use as established by the State of California and Environmental Protection Agency exist at the Cleaners Site, local to the dry cleaners. The Cleaners Site is and at all material times was a "facility" as defined in CERCLA, 42 U.S.C. § 9601(9).

27.　Chlorinated solvents used in dry cleaning are closely regulated by the state of California and the federal government. PCE and TCE are each a "Hazardous Substance" as that term is defined by CERCLA, 42 U.S.C. § 9601(14). They are "solid wastes" and "Hazardous Wastes" as those terms are defined in federal law, 42 U.S.C. § 6903(5), (27).

28.　Plaintiff is informed and believes that each Defendant's operations on the Cleaners Site included the generation, use, and storage of chlorinated solvents including perchloroethylene ("PCE"), trichloroethylene ("TCE"), and/or other Hazardous Substances.

29.　Plaintiff is informed and believes that at various times each Defendant intentionally, willfully, negligently, suddenly and accidentally spilled, caused or contributed to the presence of Hazardous Substances, Hazardous Waste, and/or

7

solid waste in the environment, including soil and soil vapor at the Cleaners Site, by virtue of their past or present handling, storage, treatment, transportation, generation, release, or disposal of Hazardous Substances, Hazardous Waste, and/or solid waste in the environment.

30.   Plaintiff has incurred Response Costs for the Hazardous Substances on or at the Cleaners Site and is informed and believes that additional Response Costs are required.

31.   Plaintiff has not contributed in any way to the alleged presence of Hazardous Substances on or at the Cleaners Site.

**FIRST CAUSE OF ACTION**

**(Cost Recovery - CERCLA § 107(a))**

**(Plaintiff Against All Defendants)**

32.   Plaintiff realleges and incorporates by reference the allegations set forth above and below, inclusive, as though set forth in full herein.

33.   CERCLA §107(a), 42 U.S.C.§ 9607(a), provides as follows:

1. the owner and operator of a vessel or a facility,

2. any person who at the time of disposal of any Hazardous Substance owned or operated any facility at which such Hazardous Substances were disposed of,

3. any person who … arranged for disposal or treatment … of Hazardous Substances ... at any facility…

4. …from which there is a release, or a threatened release which causes the incurrence of response costs, of a Hazardous Substance, shall be liable for-

B. any other necessary costs of response incurred by any other person consistent with the national contingency plan; …

8

COMPLAINT

34.    Plaintiff has, at the relevant times mentioned herein, been the owner of the Cleaners Site, a "facility," as that term is defined in CERCLA § 101(9), 42 U.S.C. § 9601(9).

35.    Defendants, and each of them, are "covered person(s)" pursuant to CERCLA § 101(21), 42 U.S.C. § 9601(21). Defendants were "owners" or "operators" of their respective facilities, exercised control over and managed their operations, and determined and implemented the policies and procedures by which they operated.

36.    Plaintiff is informed and believe that Defendants used, processed, produced, stored, treated, and/or generated Hazardous Substances during their operations.

37.    Plaintiff is informed and believe that a sudden and accidental "Release" or threatened Release of "Hazardous Substances," as those terms are defined in CERCLA §§ 101(22), (14), 42 U.S.C. §§ 9601(22), (14), has occurred, and may be continuing to occur, on, under, from and/or in the vicinity of, the Cleaners Site because of each Defendant's operations at the Cleaners Site.

38.    As a direct and proximate result of the Release(s) of Hazardous Substances that have occurred, and may be continuing to occur, on, under, from, and/or in the vicinity of, the Cleaners Site, Plaintiff has incurred and will continue to incur Response Costs as defined in CERCLA § 101(25), 42 U.S.C. § 9601(25) and other damages for the Environmental Conditions.

39.    Defendants, and each of them, are responsible persons, as defined in CERCLA § 107(a)(2) and/or (3), 42 U.S.C. § 9607(a)(2) and/or (3), because the disposal and/or releases of Hazardous Substances occurred while each of them operated businesses which used Hazardous Substances and generated Hazardous Waste, and because Defendants arranged for the disposal of Hazardous Substances at the Cleaners Site.

9

COMPLAINT

40. Defendants are each strictly liable, jointly and severally, to Plaintiff under CERCLA, 42 U.S.C. § 9607(a), for all Response Costs that Plaintiff has incurred and will incur resulting from the Releases, in an amount that Plaintiff will prove at trial in this action.

41. Plaintiff did not cause or contribute to and denies that it is liable for costs incurred as the result of, the alleged release or threatened release of Hazardous Substances at the Cleaners Site. In the interest of an expeditious cleanup and acting in good faith, Plaintiff incurred, and will continue to incur, Response Costs for the Environmental Conditions at the Cleaners Site.

42. The Response Costs that Plaintiff has incurred, and will continue to incur, are necessary and consistent with the NCP.

## SECOND CAUSE OF ACTION

### (Declaratory Relief - CERCLA § 113(g) and 28 U.S.C § 2201, et seq.)

### (Plaintiff Against All Defendants)

43. Plaintiff realleges and incorporates by reference the allegations set forth above and below, inclusive, as though set forth in full herein.

44. An actual legal controversy exists between Plaintiff, on the one hand, and Defendants, on the other hand. Plaintiff contends that it is entitled to a declaration that Defendants are liable under CERCLA for all past, present, and future Response Costs and other damages incurred by Plaintiff in connection with the Cleaners Site. Plaintiff is informed and believes that Defendants contend otherwise.

45. Plaintiff desires and is entitled to a declaration of the parties' respective rights and duties pursuant to CERCLA § 113(g), 42 U.S.C. § 9613(g) and 28 U.S.C. § 2201 *et seq.*, including Defendants' liability to Plaintiff for past, present and future Response Costs incurred and to be incurred by Plaintiff in response to the Releases of Hazardous Substances and/or Hazardous Waste and

COMPLAINT

adverse environmental consequences at issue, and other penalties and/or damages imposed on Plaintiff in connection with the Cleaners Site.

46. No adequate or speedy remedy exists for Plaintiff in the absence of such a judicial declaration. Substantial costs will be incurred by Plaintiff over time and after the conclusion of this action. Unless declaratory relief is granted, it will be necessary for Plaintiff to commence many successive actions against Defendants, and each of them, to secure compensation for the Response Costs incurred and damages sustained, thus requiring a multiplicity of suits. A judicial determination of each of the Defendants' liability to Plaintiff is therefore necessary and appropriate at this time for Plaintiff to ascertain its rights against the Defendants.

## THIRD CAUSE OF ACTION

### (Continuing Nuisance)

### (Plaintiff Against All Defendants)

47. Plaintiff realleges and incorporates by reference the allegations set forth above and below, inclusive, as though set forth in full herein.

48. Plaintiff has, at the relevant times mentioned herein, been the owner of the Cleaners Site and further has the right and certain obligation(s) as set forth in the Environmental Indemnification Agreement and its operative Amendment(s) with Cathay Investment, LLC.

49. Plaintiff is informed and believe that a "Release" or threatened release of "Hazardous Substances," as those terms are defined in CERCLA §§ 101(22), (14), 42 U.S.C. §§ 9601(22), (14), has occurred, and may be continuing to occur, on, under, from and/or in the vicinity of, the Cleaners Site.

50. Plaintiff is informed and believe that each Defendant's acts and/or omissions, caused, created, maintained, and/or contributed to the environmental contamination at the Cleaners Site.

51. Plaintiff is informed and believe that Defendants, and each of them, allowed, and continue to allow, the environmental contamination to persist.

11

COMPLAINT

52.     Defendants' Releases of Hazardous Substances have unreasonably and substantially interfered with and obstructed Plaintiff's property rights, constituting a nuisance within the meaning of Cal. Civil Code § 3479, which nuisance is continuing and abatable by, among other things:

a. Posing an unreasonable and substantial threat to human health;

b. Being indecent or offensive to the senses;

c. Preventing the sale, use, and/or development of the Cleaners Site;

d. Diminishing the fair market value of the Cleaners Site;

e. Forcing Plaintiff to incur liability, damages, and/or costs, including attorneys' fees, expenses, and costs, caused by the presence of the environmental contamination

53.     Plaintiff is informed and believes that Defendants knew or should have known that Plaintiff did not consent to the nuisance.

54.     Plaintiff is informed and believe that the environmental contamination can be discontinued and/or abated.

55.     Plaintiff demands that the Defendants discontinue and/or abate the environmental contamination. Defendants have failed and refused, and continue to fail and refuse, to discontinue and/or abate the environmental contamination.

56.     As a direct and proximate result of the acts, omissions, and conduct of Defendants and of the continuing nuisance caused thereby, Plaintiff has suffered and continues to suffer damages as previously described herein, including other special, consequential, incidental, and general damages to be proven at trial.

57.     Plaintiff also requests that this Court issue a temporary restraining order, a preliminary injunction, and a permanent injunction requiring the Defendants, and their respective agents, representatives, servants, and employees, and all persons acting by or under their authority or in concert with them, to conduct the necessary environmental investigation, removal, and/or remediation to discontinue and/or abate the Hazardous Substances.

12

COMPLAINT

## FOURTH CAUSE OF ACTION

### (Continuing Trespass)

### (Plaintiff Against All Defendants)

58.    Plaintiff realleges and incorporates by reference the allegations set forth above and below, inclusive, as though set forth in full herein.

59.    Plaintiff has, at the relevant times mentioned herein, been the owner of the Cleaners Site and further has the right and certain obligation(s) as set forth in the Environmental Indemnification Agreement and its operative Amendment(s) with Cathay Investment, LLC.

60.    Plaintiff is informed and believe that a "Release" or threatened release of "Hazardous Substances," as those terms are defined in CERCLA §§ 101(22), (14), 42 U.S.C. §§ 9601(22), (14), has occurred, and may be continuing to occur, on, under, from and/or in the vicinity of, the Cleaners Site.

61.    Plaintiff is informed and believe that each Defendant's acts and/or omissions, caused, created, maintained, and/or contributed to the environmental contamination at the Cleaners Site.

62.    Plaintiff is informed and believe that Defendants, without the consent or knowledge of Plaintiff, released Hazardous Substances and knew or should have known that any such release would contaminate the Cleaners Site.

63.    Defendants' Releases of Hazardous Substances have unreasonably and substantially interfered with and obstructed Plaintiff's property rights.

64.    Plaintiff is informed and believe that the environmental contamination can be discontinued and/or abated at a reasonable cost by reasonable means.

65.    Plaintiff demands that the Defendants discontinue and/or abate the environmental contamination. Defendants have failed and refused, and continue to fail and refuse, to discontinue and/or abate the environmental contamination.

66.    As a direct and proximate result of the acts, omissions, and conduct of Defendant and of the continuing trespass caused thereby, Plaintiff has suffered and

13

COMPLAINT

continues to suffer damages as previously described herein, including other special, consequential, incidental, and general damages to be proven at trial.

67. Plaintiff also requests that this Court issue a temporary restraining order, a preliminary injunction, and a permanent injunction requiring the Defendants, and their respective agents, representatives, servants, and employees, and all persons acting by or under their authority or in concert with them, to conduct the necessary environmental investigation, removal, and/or to discontinue and/or abate the environmental contamination.

## FIFTH CAUSE OF ACTION

### (Equitable Indemnity)

### (Plaintiff Against All Defendants)

68. Plaintiff realleges and incorporates by reference the allegations set forth above and below, inclusive, as though set forth in full herein.

69. Plaintiff is informed and believe that the liability, if any, that Plaintiff may have to any other person, government or regulatory agency, under any law, regulation, or common law principle, relating to the alleged contamination at and emanating from the Cleaners Site, is the proximate cause, in whole or in part, of the acts and omissions of Defendants.

70. As a direct and proximate result of spills and other releases of Hazardous Substances as alleged above, Plaintiff has incurred and will incur Response Costs, beyond its fair share, if any, for Hazardous Substances at and emanating from the Cleaners Site, and any other costs associated with the Environmental Conditions.

71. As between Plaintiff and Defendants, Defendants are solely responsible for all Response Costs for Hazardous Substances at and emanating from the Cleaners Site, and any other costs associated with the Environmental Conditions.

COMPLAINT

72. In the event that Plaintiff is adjudged liable for any or all relief requested in any judicial or administrative action, arising out of or related to the alleged contamination at and emanating from the Cleaners Site, brought against Plaintiff by any persons or entities, public or private, such liability is purely secondary, imputed, or technical.

73. Plaintiff is entitled to equitable indemnity and/or contribution, including (without limitation) under California Civil Code § 1432, against all costs, arising out of, or relating to the alleged contamination at and emanating from the Cleaners Site, and any other costs it has incurred or will incur in the future.

## SIXTH CAUSE OF ACTION

### (Declaratory Relief Under State Law)

### (Plaintiff Against All Defendants)

74. Plaintiff realleges and incorporates by reference the allegations set forth above and below, inclusive, as though set forth in full herein.

75. An actual legal controversy exists between Plaintiff, on the one hand, and Defendants, on the other hand. Plaintiff contends that it is entitled to a declaration that Defendants are liable for all past, present, and future Response Costs and other damages incurred by Plaintiff in connection with the Cleaners Site. Plaintiff is informed and believes that Defendants contend otherwise.

76. Plaintiff desires and is entitled to a declaration of the parties' respective rights and duties pursuant to Cal. Civil Proc. Code § 1060, including Defendants' liability to Plaintiff for all Response Costs incurred and those to be incurred by Plaintiff in response to the Releases of Hazardous Substances and/or Hazardous Waste and adverse environmental consequences at issue.

77. No adequate or speedy remedy exists for Plaintiff in the absence of such a judicial declaration. Substantial costs will be incurred by Plaintiff over time and after the conclusion of this action. Unless declaratory relief is granted, it will be necessary for Plaintiff to commence many successive actions against Defendants,

15

COMPLAINT

and each of them, to secure compensation for the costs incurred and damages sustained, thus requiring a multiplicity of suits. Plaintiff therefore requests a declaration from the Court setting forth Plaintiff's and Defendants' liability for Response Costs, and other penalties and/or damages imposed on Plaintiff in connection with the Cleaners Site.

## SEVENTH CAUSE OF ACTION

### (Breach of Lease)

### (Plaintiff Against Defendants Jadish Patel, Harsha Patel, and C & L, LLC)

78. Plaintiff realleges and incorporates by reference the allegations set forth above and below, inclusive, as though set forth in full herein.

79. Defendants Jagdish Patel, Harsha Patel, and C & L, LLC have operated a drycleaner at the Cleaners Site, known as First Cabin Cleaners and Classic Cleaners, under a lease agreement with Plaintiff from at least April 7, 1987, to the present.

80. Pursuant to the original lease dated October 29, 1974, which Defendants Jagdish Patel and Harsha Patel assumed from Rozanne and Anthony O'Malley on approximately April 7, 1987, Defendants were obligated to comply with all laws and regulations:

12. COMPLIANCE WITH LAWS. ***Tenant shall, at his sole cost and expense, comply with all the requirements of all municipal, state and federal authorities now in force or which may hereafter be in force pertaining to the use of said premises,*** and shall faithfully observe in said use all Municipal ordinances and State and Federal statutes now in force or which shall hereinafter be in force. The judgment of any court of competent jurisdiction, or the admission of Tenant in any action, or proceeding against Tenant, whether Landlord be a party thereto or not, that Tenant has violated any such order or statute in said use, shall be conclusive of that fact as between the landlord and Tenant. ***Tenant***

COMPLAINT

*shall not commit, or suffer to be committed, any waste upon the demised premises, or any nuisance* or other act or thing which may disturb the quiet enjoyment of any other tenant in the Sea Gate Plaza Shopping Center." (Emphasis added).

81. Furthermore, Defendant Jagdish Patel entered a lease on July 1, 1996, with Plaintiff which provides in relevant part as follows:

*16.5 Remediation. Whether or not required by any applicable law, Tenant shall, at Tenant's sole cost and expense, promptly, diligently and fully investigate, monitor and remediate any Hazardous Substance contamination of the Premises, the Center or the surrounding properties, which contamination was caused or contributed to by Tenant and Tenant shall maintain, restore and remediate the Premises to the condition in which the Premises existed as of the date Tenant took possession of the Premises. Any investigation, monitoring and remediation done by Tenant shall be performed by consultants, contractors and personnel reasonably approved by Landlord in advance and in accordance with the recommendations and under the supervision of the Landlord.*

*16.6 Indemnity. Tenant shall indemnify, defend (with counsel satisfactory to Landlord), protect and hold Landlord, its agents, employees, lenders and/or ground lessors, if any, the Premises and the Center harmless from and against any loss of rents and/or damages, liabilities, judgements, costs, claims, liens, expenses, penalties, attorney's and consultants' fees arising out of or involving any Hazardous Substance. . . . (Emphasis added).*

82. Defendant C & L, LLC entered a lease on August 1, 2001, with

17

COMPLAINT

Plaintiff, which Defendant Jagdish Patel personally guaranteed, that provides as follows:

> *16.5 Remediation. Whether or not required by any applicable law, Tenant shall, at Tenant's sole cost and expense, promptly, diligently and fully investigate, monitor and remediate any Hazardous Substance contamination of the Premises, the Center or the surrounding properties, which contamination was caused or contributed to by Tenant and Tenant shall maintain, restore and remediate the Premises to the condition in which the Premises existed as of the date Tenant took possession of the Premises. Any investigation, monitoring and remediation done by Tenant shall be performed by consultants, contractors and personnel reasonably approved by Landlord in advance and in accordance with the recommendations and under the supervision of the Landlord.*

> *16.6 Indemnity. Tenant shall indemnify, defend (with counsel satisfactory to Landlord), protect and hold Landlord, its agents, employees, lenders and/or ground lessors, if any, the Premises and the Center harmless from and against any loss of rents and/or damages, liabilities, judgements, costs, claims, liens, expenses, penalties, attorney's and consultants' fees arising out of or involving any Hazardous Substance. . . . (Emphasis added).*

83. Uniform Hazardous Waste Manifests indicate that Defendants used significant amounts of PCE as the primary solvent for at least twenty (20) years of their drycleaning operations. The use of PCE on the Cleaners Site, previously reported subsurface contamination at Cleaners Site, and the location of significant concentrations of PCE beneath the dry cleaning machine confirm that Defendants'

18

operations have impacted the subsurface beneath the Cleaners Site, and have caused and will cause Plaintiff to incur Response Costs for the Hazardous Substances on or at the Cleaners Site.

84. Defendants are potentially responsible parties, whether by ownership, operation, or both, participated in causing or contributing to the release of Hazardous Substances at and in the vicinity of the Cleaners Site and are therefore responsible for the contamination. Plaintiff demanded and further demands by this complaint that Defendants, as responsible parties, immediately take all actions required to investigate, mitigate, remove, and/or remediate Hazardous Substances at and emanating from their operations at the Cleaners Site.

85. Pursuant to Sections 1021, 1021.6 of the California Code of Civil Procedure, and in accordance with the terms of the lease, Plaintiff demanded and further demands by this complaint that Defendants defend, indemnify, and hold Plaintiff harmless from all claims and liability associated with the release of Hazardous Substances at and emanating from the Cleaners Site.

86. Plaintiff by this action pursues damages and declaratory relief, compelling Defendants to investigate, mitigate, remove, and/or remediate the Hazardous Substances specifically those identified herein, at and from their operations at the Cleaners Site.

87. Plaintiff demanded and further demands by this complaint that Defendants reimburse it for any and all Response Costs associated with the release of Hazardous Substances at and emanating from the Cleaners Site.

88. Defendants breached their obligations under the lease agreement by releasing Hazardous Substances, allowing Hazardous Substances to be released, allowing the Hazardous Substances to be present on or at the Cleaners Site in violation of municipal, state, and federal laws, failing to investigate, abate, remove, and/or remediate the Hazardous Substances at and emanating from their operations at the Cleaners Site, failing to reimburse Plaintiff for Response Costs for the

Hazardous Substances at and emanating from their operations at the Cleaners Site, and failing to defend, indemnify, and hold Plaintiff harmless from all claims and liability associated with the release of Hazardous Substances at and emanating from their operations at the Cleaners Site.

89. As a result of the breaches of the lease agreement by Defendants, Plaintiff was forced to hire counsel and expend fees and costs. Accordingly, Plaintiff is entitled to recoup said attorney's fees and costs as the prevailing party according to the lease agreement in an amount to be determined by the Court.

90. Plaintiff and its predecessors in interest and assignors of the lease agreement have performed all conditions, covenants, and promises required by them in accordance with the terms and conditions of the lease agreement.

91. The above material facts constitute breaches of the lease agreement by Defendants. Their acts, omissions, and conduct further breached the implied covenant of good faith and fair dealing contained in the lease agreement.

92. As a direct and proximate result of Defendants' breaches of the lease agreement, Plaintiff has been damaged and will continue to suffer damages according to proof, including attorneys' fees, expert witness fees, and related costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that judgment be entered in its favor for the following:

1. For all past, present, and future Response Costs incurred by Plaintiff the exact amount of which will be ascertained according to proof;

2. For a declaration that Defendants are liable under CERCLA and/or California Code of Civil Procedure § 1060, for all past, present, and future Response Costs and other damages, which may be incurred by Plaintiff at, or in the vicinity of, the Cleaners Site;

3. For a preliminary and permanent injunction requiring Defendants to undertake at their sole cost and consistent with the NCP at 40 C.F.R. Part 300, all

20

actions necessary to investigate and abate the nuisance conditions and endangerments to health or the environment that may be presented by Defendants' use and disposal of "Hazardous Substances" as alleged above, including installing treatment systems and implementing monitoring programs, to prevent further migration of Hazardous Substances from the Cleaners Site;

4. For an order requiring Defendants to undertake at their sole cost all actions necessary to investigate, remove, abate, and/or remediate the alleged contamination;

5. For treble damages pursuant to California Code of Civil Procedure § 732.

6. For compensatory and consequential damages;

7. For an award to Plaintiff for its costs of litigation, including attorneys' fees and expert witness fees pursuant to California Code of Civil Procedure §§ 1021, 1021.5, and 1021.6;

8. For prejudgment and post-judgment interest;

9. For all costs of suit herein;

10. For such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands trial by jury of any and all issues so triable.

DATED: March 18, 2026                    TROPEA MCMILLAN, LLP

_/S/ Santino M. Tropea_
SANTINO M. TROPEA
BRANDON VEGTER
Attorneys for Plaintiff Asbury
Properties, Inc.

21

COMPLAINT